# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARLAND ADAMS,       :<br>    Plaintiff,       :<br>                  :<br>v.            :<br>                  :<br>CORRECTIONS EMERGENCY    :<br>RESPONSE TEAM (CERT), *et al.*,  :<br>    Defendants.        : | CIVIL ACTION NO. 19-CV-3301 |

## MEMORANDUM

**GOLDBERG, J.**                                                                                   **AUGUST 28, 2019**

Plaintiff Garland Adams, a prisoner currently incarcerated at SCI-Phoenix, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983 and § 1985, against the Corrections Emergency Response Team (CERT), Superintendent Tammy Ferguson (misspelled Tammy Furguson), and John/Jane Doe members of CERT.[1] Adams alleges that his constitutional rights were violated by the loss and destruction of his property during the movement of prisoners from SCI Graterford to SCI Phoenix. He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Adams leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim without prejudice to amendment.

## I.     FACTS

Adams's claims stem from the Pennsylvania Department of Corrections' movement of prisoners from SCI-Graterford to SCI-Phoenix in July of 2018. According to the Complaint,

---

[1] The caption also identifies "those whose involvements and/or identities are not presently [now] known" as Defendants, but this appears nothing more than a placeholder in the event Adams learns of other individuals' involvement in his claims. There are no allegations in the Complaint against these unknown individuals (as opposed to the unknown members of CERT), so Adams has not stated a claim against them.

1

CERT is a team of prison staff that, under Ferguson's supervision, moved the legal and personal property of inmates from SCI Graterford to SCI Phoenix. Adams alleges that CERT members removed their name tags during the course of the move so that prisoners would not be able to identify them.

On July 15, 2018, Adams relinquished his property to CERT members for transport to SCI Phoenix. When he received his property after the move, he observed that the following items were missing: "3 pair of Nike Overplay sneakers, 1 religious necklace, 6 white T-shirts, 6 pair [of] heavy duty thermal socks, 3 pair of Long Johns, 2 pair of thermal pants and shirts, 2 sweat suits, and legal mail and trial notes." (Compl. at 5.)[2] Adams estimates the value of these items to be $8,000. Adams, who is black, also observed that unknown CERT members defaced his property by writing racial epithets and drawing swastikas on pictures of his nephews, who are also black.

Adams alleges that CERT members conspired to "mistreat[] and abus[e] the personal, legal and religious property, in a similar fashion of over one hundred of the inmates whom they moved from SCI-Graterford to SCI-Phoenix." (*Id.*) He also alleges that these events happened under Ferguson's supervision. Adams alleges that he attempted to file a grievance about the matter but that the Defendants refused to respond, rendering the grievance process unavailable.

Based on those allegations, Adams asserts claims pursuant to 42 U.S.C. § 1983 under the First, Eighth, and Fourteenth Amendments. He also asserts claims pursuant to 42 U.S.C. § 1985 based on the manner in which his property was defaced. Adams contends that members of CERT conspired to deprive him of equal protection of the laws and Ferguson "joined in and

---

[2] The Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

encouraged, if not spearheaded the conspiracy" by "shirking her responsibility" to protect prisoners' property and allowing CERT members to conceal their name tags. (*Id.* at 7.) Adams seeks millions of dollars in damages.

## II. STANDARD OF REVIEW

The Court grants Adams leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Adams is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims under § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Adams's Complaint fails to state a claim.

---

[3] However, as Adams is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

### 1. Official Capacity Claims

The Complaint reflects that Adams is suing the Defendants in their official and individual capacities. The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Accordingly, the Court will dismiss Adams's claims against the Defendants in their official capacities and address his individual capacity claims below.

### 2. First Amendment Claims

Adams alleges that the "taking of [his] religious adornment" violated his First Amendment right to practice his Islamic faith.[4] (Compl. at 8.) The threshold question in any First Amendment case is whether the prison's conduct "has substantially burdened the practice of the inmate-plaintiff's religion." *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (per curiam). Adams has not alleged any facts explaining how the loss of his property prevented him from practicing his religion. To the contrary, his allegations that he has been prevented from exercising his religion are conclusory. Accordingly, the Complaint does not state a plausible First Amendment claim.[5] *See Peele v. Klemm*, 663 F. App'x 127, 130

---

[4] The Complaint also alludes to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Adams has not stated a basis for a RLUIPA claim here because money damages are not available under that statute and RLUIPA does not provide a basis for claims against the Defendants in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).

[5] To the extent Adams intended to raise a First Amendment claim based on the loss or destruction of any legal property, any such claim fails because he has not alleged any actual

4

(3d Cir. 2016) (per curiam) (upholding dismissal of First Amendment claim where "Peele failed to provide any factual support for his First Amendment claims beyond general conclusory allegations that DC–819 was inimical to his and possibly other inmates First Amendment rights"); *O'Banion v. Anderson*, 50 F. App'x 775, 776 (7th Cir. 2002) ("O'Banion has no First Amendment freedom-of-religion claim because he does not suggest that the confiscation of his property restricted the exercise of his religious beliefs. He cannot resurrect his property claim simply by characterizing the feathers and furs as 'religious property' without alleging that his religious observance was unreasonably restricted"); *Grohs v. Santiago*, Civ. A. No. 13-3877, 2014 WL 4657116, at *10 (D.N.J. Sept. 17, 2014) (dismissing free exercise claim where plaintiff "never identified his faith nor has he identified the sincerely held religious beliefs that required him to retain [certain religious] materials").

### 3. Eighth Amendment Claims

Adams asserts an Eighth Amendment claim based on the loss and destruction of his property. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-

---

injury as a result of the loss of those materials. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an ' actual injury' — that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002))).

5

conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* The loss, theft, or destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Young v. Edward*, Civ. A. No. 17-1736, 2018 WL 4616245, at *3 (M.D. Pa. Sept. 26, 2018) ("The alleged destruction of personal property does not constitute a deprivation of the sort within the protection of the Eighth Amendment."); *Payne v. Duncan*, Civ. A. No. 15-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, Civ. A. No. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*, No. CIV.A. 11-525, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011).

In addressing claims of another prisoner who similarly alleged that members of CERT drew swastikas on family photographs during the movement of property to SCI Phoenix, the Honorable Cynthia M. Rufe explained that

> the drawing of a vile and indefensible symbol on a prisoner's property is repugnant and detrimental to the orderly administration of a prison, and should be cause for serious disciplinary action against the responsible party, if known. Nevertheless, although the incident was understandably distressing to Plaintiff, Plaintiff has not alleged any facts to show that it substantially affected Plaintiff's health or safety, and therefore it does not rise to the level of an Eighth Amendment violation.

*Wongus v. Corr. Emergency Response Team*, Civ. A. No. 18-4445, 2019 WL 3288102, at *3 (E.D. Pa. July 19, 2019). The same is true here. Adams alleges reprehensible conduct by CERT members, but his allegations do not support a plausible basis for an Eighth Amendment claim. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (per curiam) ("[T]he display of

6

white pillowcase hoods, Nazi salutes, and the posting of an offensive picture, while unprofessional and reprehensible, do not amount to a violation of constitutional rights, even if those things occurred."); *Dobbey v. Illinois Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009) (holding that the hanging of a noose by white guards in front of black inmates did not amount to cruel and unusual punishment even though the court was "mindful of the ugly resonance of the noose, symbolic of the lynching of blacks, for black people"); *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (per curiam) ("Verbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment.").

### 4. Due Process Claims

Adams asserts a due process claim under the Fourteenth Amendment based on the destruction of his property.[6] However, there is no basis for a due process claim because Pennsylvania law provides Adams with an adequate state remedy to compensate him for his destroyed property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011)

---

[6] The language used by Adams also suggests he may be trying to bring a claim under the Takings Clause. "The Takings Clause of the Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation.'" *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 63 (3d Cir. 2013) (quoting U.S. Const. amend. V) (alteration in original). Nothing in the Complaint suggests that Adams's property was taken for a public purpose, so the Takings Clause is not implicated here. *See Roop v. Ryan*, Civ. A. No. 12-0270, 2012 WL 1068637, at *3 (D. Ariz. Mar. 29, 2012) ("A prisoner property claim only implicates the Fifth Amendment Takings Clause where the prisoner alleges that prison officials took his personal property and converted it for public use without just compensation."); *Allen v. Wood*, 970 F. Supp. 824, 831 (E.D. Wash. 1997) ("Plaintiff fails to show that property he was authorized to receive was taken for public use.").

(per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, Adams cannot state a due process claim. *See Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (per curiam) ("Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy.").

     **5. Equal Protection Claims**

Adams also brings an equal protection claim. To state an equal protection claim, a plaintiff must allege facts showing that he received different treatment than others similarly situated and that the treatment was due to membership in a protected class. *See Faruq v. McCollum*, 545 F. App'x 84, 87 (3d Cir. 2013) ("To state a claim for race- or religion-based discrimination, [plaintiff] needed to show specifically that he received different treatment from that received by other similarly situated inmates." (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)). The use of racial epithets and offensive imagery, though despicable and indefensible, do not amount to an equal protection violation absent "harassment or some other conduct that deprives the victim of established rights." *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *see also Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) ("Though [racially charged remarks] are thoroughly offensive, and it is particularly reprehensible for a government official to utter them in the course of his official duties, we believe that the use of racially derogatory language, unless it is pervasive or severe enough to amount to racial harassment, will not by itself violate the fourteenth amendment."); *Mugavero v. Town of Kearny*, Civ. A. No. 12-2439, 2013 WL 3930120, at *3 (D.N.J. July 30, 2013) ("[L]ike offensive statements, the display or drawing of offensive imagery does not, on its own, amount to a constitutional violation."). Although "[t]he use of an epithet is . . . strong evidence that a

comment or action is racially motivated[,]" the relevant question "is not just whether the conduct is racially motivated but also whether that action deprives a person of 'equal protection of the laws.'" *Williams*, 180 F.3d at 706 (quoting U.S. Const. amend. XIV).

Here, Adams alleges that offensive, racist language and images were used to deface his property. However, the Complaint does not allege that Adams was treated differently from others similarly situated. Adams contends that CERT members conspired to "mistreat[] and abus[e] the personal, legal and religious property, in a similar fashion of over one hundred of the inmates whom they moved from SCI-Graterford to SCI-Phoenix." (Compl. at 5.) That allegation suggests that Adams was treated similarly to other prisoners. Although the manner in which Adams's photographs were defaced supports an inference of discriminatory intent, if CERT destroyed prisoners' property in the transfer without regard to race, Adams could not prevail on his equal protection claim. In sum, although Adams's allegations are disturbing, they do not support a plausible equal protection claim as pled.

### B. Claims under § 1985

Adams also asserts claims under § 1985(3).[7] "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are

---

[7] The other provisions of § 1985 are not applicable here.

victims of the defendants' tortious conduct"). Adams's § 1985 claim fails for the same reasons as his equal protection claim, *i.e.*, the Complaint as pled does not support a plausible basis for an equal protection claim or a race-based conspiracy.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Adams's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). "In reaching this conclusion, [the Court] do[es] not wish to understate or minimize the loss that [Adams] has described in his complaint; [the Court] hold[s] only that he has not stated a claim for the violation of a constitutional right." *Hernandez*, 771 F. App'x at 145. However, the dismissal of Adams's Complaint is without prejudice to amendment in the event he can state a plausible basis for a constitutional claim. An appropriate Order follows.