# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARLAND ADAMS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-3301 |
| | : | |
| CORRECTIONS EMERGENCY | : | |
| RESPONSE TEAM ("CERT"), *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**GOLDBERG, J.**                                                                                                                                                                                              **MARCH 24, 2020**

      Plaintiff Garland Adams, a prisoner currently incarcerated at SCI-Phoenix, has filed an Amended Complaint pursuant to 42 U.S.C. § 1983 and § 1985, against the Corrections Emergency Response Team ("CERT"), Superintendent Tammy Ferguson, and John/Jane Doe members of CERT. Adams alleges that his constitutional rights were violated by the loss and destruction of his property during the movement of prisoners from SCI Graterford to SCI Phoenix. For the following reasons, I will dismiss Adams's Amended Complaint for failure to state a claim.

## I. FACTS AND PROCEDURAL HISTORY

      Adams's claims stem from the Pennsylvania Department of Corrections's movement of prisoners from SCI-Graterford to SCI-Phoenix in July of 2018. On July 15, 2018, Adams relinquished his property to CERT members for transport to SCI Phoenix. In his initial Complaint, Adams alleged that when he received his property after the move, he observed that the following items were missing: "3 pair of Nike Overplay sneakers, 1 religious necklace, 6 white T-shirts, 6 pair [of] heavy duty thermal socks, 3 pair of Long Johns, 2 pair of thermal pants and shirts, 2 sweat

suits, and legal mail and trial notes." (Compl. ECF No. 1 at 5.)[1]  Adams estimated the value of these items to be $8,000.  Adams, who is black, also observed that unknown CERT members defaced his property by writing racial epithets and drawing swastikas on pictures of his nephews, who are also black.

Adams alleged that CERT members conspired to "mistreat[] and abus[e] the personal, legal and religious property, in a similar fashion of over one hundred of the inmates whom they moved from SCI-Graterford to SCI-Phoenix." (*Id.*)  He also alleged that these events happened under Ferguson's supervision.  Adams asserted claims pursuant to 42 U.S.C. § 1983 under the First, Eighth, and Fourteenth Amendments, as well as claims pursuant to 42 U.S.C. § 1985 based on the manner in which his property was defaced.  He sought millions of dollars in damages.

In a Memorandum and Order entered on the docket on August 29, 2019, I granted Adams leave to proceed *in forma pauperis* and dismissed his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  (ECF Nos. 6 & 7.)  Relevant here, I dismissed Adams's First Amendment claims based on the taking of his "religious adornment" because Adams failed to allege "any facts explaining how the loss of his property prevented him from practicing his religion." (ECF No. 6 at 4.)  I also rejected any RLUIPA claim because that statute does not provide for damages or claims against the Defendants in their individual capacities.  (*Id.* at 4 n.4.)  I also dismissed Adams's Eighth Amendment and Due Process claims because the loss and/or destruction of Adams's property did not amount to a constitutional violation under those provisions.  (*Id.* at 5-8.)  Finally, although I was troubled by the drawing of swastikas and racial epithets on Adams's family photographs, I concluded that he failed to allege an Equal Protection

---

[1] I adopt the pagination assigned to Adams's pleadings by the CM/ECF docketing system.

violation or a § 1985 claim because he did not allege that he was treated differently from others similarly situated or plausibly describe a race-based conspiracy. (*Id.* at 8-10.)

Adams was given leave to file an amended complaint in the event he could cure any of the defects in his claims. After being granted an extension of time to do so, Adams filed his Amended Complaint. (*See* ECF Nos. 9 & 10.) The Amended Complaint raises essentially the same allegations as Adams's initial Complaint. He alleges that certain of his property was lost and/or destroyed in the movement of prisoners from SCI-Graterford to SCI-Phoenix. Adams alleges that he lost the following property, which he valued in excess of $8,000: "3 pair of Nike Overplay sneakers, 1 religious necklace, 6 pair of white T-shirts, 6 pair of heavy duty thermal socks, 3 pair of Long Johns, 2 pair of thermal pants and shirts, 2 sweat suits, and legal mail and trial notes." (Am. Compl. ECF No. 10 at 3.) He again explains that several of his family photographs were defaced with racial epithets and alleges that these acts were race-based because he and his depicted family members are black. (*Id.*)

Most of Adams's new allegations concern Defendant Ferguson's alleged involvement in the events, specifically, that she directed CERT members to throw out inmate property, regardless of its cultural or religious value, if they thought the inmates should not be permitted to have the property. (*Id.* at 3-4.) Adams alleges that, based on Ferguson's direction, CERT members acted unlawfully to take "certain items of [his] personal, legal and religious, property, as they did in the case of many of the other prisoners whom [sic] they moved." (*Id.* at 4.) He brings First Amendment claims pursuant to 42 U.S.C. § 1983, apparently based on the loss of his religious property, and claims under 42 U.S.C. § 1985 based on Ferguson's instruction to CERT members that they could dispose of inmate property regardless of its cultural or religious value. Liberally

construing the Amended Complaint, Adams may also be raising an Equal Protection claim. He seeks compensatory and punitive damages.

## II. STANDARD OF REVIEW

As Adams is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires a court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires a court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Adams is proceeding *pro se*, I construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims under § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Adams's Amended Complaint fails to state a constitutional claim.

#### 1. First Amendment Claims

Adams's First Amendment claims are based on the loss of his "religious necklace reflecting his Islamic faith."[2] (Am. Compl. ECF No. 10 at 7.) The threshold question in any First

---

[2] To the extent Adams intended to raise a First Amendment claim based on the loss or destruction of any legal property, any such claim fails because he has not alleged any actual injury as a result of the loss of those materials. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Where

4

Amendment case is whether the prison's conduct "has substantially burdened the practice of the inmate-plaintiff's religion." *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (per curiam). As with his initial Complaint, Adams has not alleged any facts explaining how the loss of his property prevented him from practicing his religion. That he lost an object of religious character does not support a plausible claim absent a burden on the exercise of his religion. Accordingly, the Amended Complaint does not state a plausible First Amendment claim.[3] *See Peele v. Klemm*, 663 F. App'x 127, 130 (3d Cir. 2016) (per curiam) (upholding dismissal of First Amendment claim where "Peele failed to provide any factual support for his First Amendment claims beyond general conclusory allegations that DC–819 was inimical to his and possibly other inmates First Amendment rights"); *O'Banion v. Anderson*, 50 F. App'x 775, 776 (7th Cir. 2002) ("O'Banion has no First Amendment freedom-of-religion claim because he does not suggest that the confiscation of his property restricted the exercise of his religious beliefs. He cannot resurrect his property claim simply by characterizing the feathers and furs as 'religious property' without alleging that his religious observance was unreasonably restricted"); *Grohs v. Santiago*, Civ. A. No. 13-3877, 2014 WL 4657116, at *10 (D.N.J. Sept. 17, 2014) (dismissing free

---

prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an ' actual injury' — that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002))).

[3] To the extent Adams also intended to bring claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 200 cc-1, any such claims fail because money damages are not available under that statute and RLUIPA does not provide a basis for claims against the Defendants in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).

exercise claim where plaintiff "never identified his faith nor has he identified the sincerely held religious beliefs that required him to retain [certain religious] materials").

## 2. Equal Protection Claims

Adams also has not pled a plausible equal protection claim. To state an equal protection claim, a plaintiff must allege facts showing that he received different treatment than others similarly situated, and that the treatment was due to membership in a protected class. *See Faruq v. McCollum*, 545 F. App'x 84, 87 (3d Cir. 2013) ("To state a claim for race- or religion-based discrimination, [plaintiff] needed to show specifically that he received different treatment from that received by other similarly situated inmates." (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)). The use of racial epithets and offensive imagery, though despicable and indefensible, do not amount to an equal protection violation absent "harassment or some other conduct that deprives the victim of established rights." *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999), *clarified on rehearing*, 186 F.3d 633 (1999); *see also Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) ("Though [racially charged remarks] are thoroughly offensive, and it is particularly reprehensible for a government official to utter them in the course of his official duties, we believe that the use of racially derogatory language, unless it is pervasive or severe enough to amount to racial harassment, will not by itself violate the fourteenth amendment."); *Mugavero v. Town of Kearny*, Civ. A. No. 12-2439, 2013 WL 3930120, at *3 (D.N.J. July 30, 2013) ("[L]ike offensive statements, the display or drawing of offensive imagery does not, on its own, amount to a constitutional violation."). Although "[t]he use of an epithet is . . . strong evidence that a comment or action is racially motivated[,]" the relevant question "is not just whether the conduct is racially motivated but also whether that action deprives a person of 'equal protection of the laws.'" *Williams*, 180 F.3d at 706 (quoting U.S. Const. amend. XIV).

As in his initial Complaint, Adams alleges in his Amended Complaint that offensive, racist language and images were used to deface his property. However, Adams again fails to allege that he was treated differently from others who are similarly situated. Adams alleges that, based on Ferguson's direction, CERT members acted unlawfully to take "certain items of [his] personal, legal and religious, property, as they did in the case of many of the other prisoners whom [sic] they moved." (Am. Compl. ECF No. 10 at 4.) That allegation again suggests that Adams was treated similarly to other prisoners. Although the manner in which Adams's photographs were defaced supports an inference of discriminatory intent, Adams's allegations suggest that the Defendants treated all inmate property with disdain as a matter of course. In sum, although Adams's allegations are disturbing, they do not support a plausible equal protection claim.[4]

## B. Claims under § 1985

Adams also asserts claims under § 1985(3).[5] "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory

---

[4] To the extent Adams intended to bring a due process claim based on the destruction of his property, his claim fails. There is no basis for a due process claim here because Pennsylvania law provides Adams with an adequate state remedy to compensate him for his destroyed property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, Adams cannot state a due process claim. *See Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (per curiam) ("Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy."). If Adams intended to assert state law claims, which is not clear from his Amended Complaint, he has not provided an independent basis for jurisdiction over those claims. *See* 28 U.S.C. § 1332(a).

[5] The other provisions of § 1985 are not applicable here.

animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"). Adams's § 1985 claim fails for the same reasons as his equal protection claim, *i.e.*, the Amended Complaint does not support a plausible basis for a race-based conspiracy. The facts alleged support an inference that the Defendants handled all inmate property in a callous, unprofessional, and disturbing manner regardless of its character; they do not support an inference that the Defendants did so in connection with a race-based conspiracy.

## IV. CONCLUSION

For the foregoing reasons, I will dismiss Adams's Amended Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Again, "[i]n reaching this conclusion, [I] do not wish to understate or minimize the loss that [Adams] has described . . . ; [I] hold only that he has not stated a claim for the violation of a constitutional right." *Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (per curiam). As Adams has been put on notice of the defects in his claims and was not able to cure those defects after having been given an opportunity to do so, I conclude that further attempts at amendment would be futile. An appropriate Order follows.